**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
_____ **DIVISION**

| | |
|---|---|
| **THOMAS A. ADCOCK, BARBARA J. RANKIN,** | ) |
| **LAWRENCE L. WILSON, individually and** | ) |
| **for all other persons similarly situated,** | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| **v.** | ) Case No. 3:11cv491. MCR/~ |
| | ) |
| **SCIENCE APPLICATIONS** | ) |
| **INTERNATIONAL CORPORATION** | ) |
| **Defendant.** | ) |
| | ) **JURY TRIAL** |
| | ) **DEMANDED** |
| | ) |

### CLASS ACTION COMPLAINT

COMES NOW Thomas A. Adcock, Barbara J. Rankin, and Lawrence L. Wilson,

on behalf of themselves and all other persons similarly situated (hereinafter referred to as

"Plaintiffs"), and brings this action against Defendant Science Applications International

Corporation ("SAIC" or "Defendant") based upon personal knowledge as to themselves

and their own acts, and as to all other matters upon information and belief, based upon

_inter alia_, the investigation made by their attorneys, as follows:

### PARTIES

1.      Plaintiff Thomas A. Adcock is an individual residing in Florida, and is a

TRICARE beneficiary.

2.      Plaintiff Barbara J. Rankin is an individual residing in Florida, and is a

TRICARE beneficiary.

3.      Plaintiff Lawrence L. Wilson is an individual residing in Florida, and is a

TRICARE beneficiary.

1

4. Defendant SAIC is a Delaware corporation and maintains primary offices in Mclean, Virginia, and additional offices throughout the United States.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over SAIC because at all relevant times, SAIC has regularly and systematically conducted business in Florida. SAIC maintains numerous offices throughout Florida and within this District.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

7. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391 because Defendant is subject to the personal jurisdiction of this District.

## SUBSTANTIVE ALLEGATIONS

8. On September 29, 2011, TRICARE, a health program that serves active duty soldiers, retirees and their families, released a statement on its website concerning a security breach. According to the statement, two weeks prior, on September 14, 2011, SAIC experienced a security breach affecting approximately 4.9 million patients, many of whom received care or had laboratory work processed in military facilities in San Antonio, Texas since 1992 (referred to herein as the "Security Breach").

9. According to the statement, SAIC had confirmed that the Security Breach involved the compromise of backup computer tapes from an electronic healthcare record. The personal information on the tapes compromised included Social Security numbers, addresses, phone numbers, clinical notes, lab tests, prescription information and private health information for patients located in at least 10 different states.

10. The patients impacted by the breach include people living throughout TRICARE's southern region, which includes Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Oklahoma, South Carolina, Tennessee and Texas.

11. Vernon Guidry ("Guidry"), spokesman for SAIC, confirmed that SAIC was the custodian of the information when the Security Breach occurred.

12. SAIC has contracted with TRICARE to provide a variety of services, including data security services, since at least 1992.

13. TRICARE confirmed that the backup tapes subjected to the Security Breach were being transported "pursuant to contract requirements" with SAIC.

14. The backup tapes and records, which were being transported by an SAIC employee, were left in an unattended 2003 Honda Civic for most of the day, from 7:53am to 4:30pm, on a downtown San Antonio Street.

15. SAIC placed the employee entrusted to transport the backup tapes on administrative leave, and according to Guidry, "it was his job to transfer tapes in an expeditious manner between facilities, that's all we're going to say at this point." Guidry has not stated whether the employee violated an internal policy by leaving the tapes in his car, but acknowledge, "if they weren't in his car, they wouldn't be stolen."

16. Additionally, the backup tapes were not encrypted pursuant to federal standards. SAIC stated that the system that generated the backup tapes was not capable of encrypting the backup tapes pursuant to federal standards.

17. This occurrence is not the first time SAIC has failed to secure patients' data. In July 2007, SAIC reported a data breach had occurred involving data being processed by SAIC under nine healthcare data contracts. An Air Force task force

3

investigated the breach and determined that SAIC's patient data was being transmitted in a manner that was not secure.

18.     The data that were transferred in 2007 related to soldiers, retirees, and their families using military hospital facilities and health clinics. The data included Social Security numbers, birth dates and health information.

19.     Then CEO and current Chairman of SAIC, Ken C. Dahlberg, described the 2007 security breach as "completely unacceptable."

20.     Two years prior to 2007 breach in 2005, there was yet another data breach at SAIC's headquarters which put the Social Security numbers and other personal data of tens of thousands of SAIC employees at risk.

21.     This pattern of systemic security failures demonstrates that SAIC, to this day, continues to struggle to correct its faulty data protection policies. This pattern of negligence continues although SAIC has experienced repeated warnings and embarrassments. This is especially troubling considering that SAIC is a corporation that is entrusted to protect the private information of soldiers, retirees and their families.

## CLASS ACTION ALLEGATIONS

16.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure on their own behalf and as representatives of a Class of similarly situated consumers who were all impacted by the SAIC's actions and inactions.

17.     Plaintiffs seek to represent a Class defined as follows:

> All natural persons within the United States who subscribed
> to TRICARE whose personal information was entrusted to
> SAIC and compromised. Excluded from the Class are
> SAIC, their employees, any entity in which SAIC has a
> controlling interest, SAIC's legal representatives, heirs,
> successors, and assigns.

4

18.    The members of the Class are so numerous that their joinder herein is impracticable.   On information and belief, Plaintiffs believe that the total number of members of the Class to number approximately 4.9 million.

19.    The precise number of proposed Class members and their addresses are currently unknown to Plaintiffs, but can be ascertained from SAIC or TRICARE records. Class members can be notified, if so Ordered by the Court, by mail, supplemented by published notice, if deemed necessary.

20.    There are questions of law and fact common to the Class as a whole. These common questions of law and fact predominate over any questions affecting only individual members of the Class.  The common questions of law and fact include, but are not limited to:

(a.)    Whether SAIC had inadequate security that permitted the Security Breach and compromised the private information of the Class;

(b.)    Whether SAIC failed to inform its customers of the security breach in a reasonable time and manner;

(c.)    Whether SAIC breached implied warranties to maintain the safety and security of patients' private information;

(d.)    Whether SAIC breached its contracts to protect and maintain the safety and security of patients' private information;

(e.)    Whether Plaintiff and Class members are third party beneficiaries to SAIC's contract with TRICARE; and

(f.)    Whether Defendant's conduct violated applicable statutes.

21.    Plaintiffs' claims are typical of the claims of the Class they represent because Plaintiffs, like all class members, have been the victims of SAIC's inadequate security and have suffered damages thereby.

22.     Plaintiffs will adequately represent the Class because Plaintiffs' interests are common with the other class members. Plaintiffs and the other Class members were commonly harmed by same practices and policies of SAIC. Plaintiffs' interests do not conflict with the interest of the Class they seek to represent.

23.     Plaintiffs have retained counsel who are competent and experienced in the prosecution of both complex civil litigation and class actions.

24.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as SAIC has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

25.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for SAIC. For example, one court might decide that the challenged actions are illegal and enjoin SAIC, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of the Class, whose members would not be parties to those actions.

26.     SAIC's actions are generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.

27.     SAIC's systemic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

28.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. The damages suffered by individual members of the Class are small compared to the burden and expense of individual prosecution of the

6

complex and extensive litigation required to address SAIC's conduct. Absent the class action, the members of the Class will continue to suffer harm.

29.     Class action treatment of this litigation is superior to individual litigation because it would be virtually impossible for the members of the Class individually to effectively seek redress for the wrongs done to them by SAIC. Even if the members of the Class could individually bear the financial burden of this litigation, which many cannot, the court system would be excessively burdened given the size of the Class. Individualized lawsuits would increase the delay and expense of all the parties and the courts. Individualized lawsuits present the potential for inconsistent or contradictory judgments.     By contrast, class action treatment presents far fewer management difficulties, allows the hearing of claims, which might otherwise go unaddressed, and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## V. CAUSES OF ACTION

### Count 1: Negligence

30.     Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

31.     Upon coming into possession of the private, non-public, sensitive financial information of Plaintiff and the Class members, SAIC had (and continues to have) a duty to exercise reasonable care in safeguarding and protecting the information from being compromised and/or stolen. SAIC's duty arises from the common law, in part because it was reasonably foreseeable to SAIC that a breach of security was likely to occur under the circumstances and it would cause damages to the Plaintiffs as alleged herein, as well

7

as from the duties expressly imposed upon SAIC from other sources, such as expressed and implied contracts between SAIC and the Class members.

32.    SAIC also had a duty to timely disclose to Plaintiffs and the Class members that the Data Breach had occurred and the private, non-public, sensitive personal information of Plaintiffs and the Class members. SAIC's duty to disclose the data breach to Plaintiffs and the Class members also arise from the above same sources.

33.    SAIC also had a duty to put into place internal policies and procedures designed to protect Plaintiffs' and Class members' private, non-public, sensitive personal information within its possession, custody and control.

34.    SAIC, by and through its above negligent acts and/or omissions, unlawfully breached its duties to Plaintiffs and the Class members by, among other things, failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' private, non-public, sensitive personal information within its possession, custody and control.

35.    SAIC, by and through its above negligent acts and/or omissions, further breached its duties to Plaintiffs and the Class members by failing to put into place internal policies and procedures designed to protect and safeguard Plaintiffs' and Class members' private, non-public, sensitive personal information within its possession, custody and control.

36.    But for SAIC's negligent and wrongful breach of the duties it owed (and continues to owe) to Plaintiffs and the Class members, the Plaintiffs' and Class members' private, non-public, sensitive financial information pertaining to their compromised credit cards and/or debit cards would never have been wrongfully disseminated, the Data

8

.     .

Breach would not have occurred and Plaintiffs and the Class members would not have been damaged.

37.    Having their personal and private information compromised damaged Plaintiffs, requiring Plaintiffs to take steps to ensure that they are not the victim of identity theft, credit card fraud, or other crimes.

38.    The Data Breach and the above-described injuries suffered by Plaintiffs and the Class members as a direct and/or proximate result of the data breach were reasonably foreseeable consequences of SAIC's negligence or gross negligence.

## Count 2: Breach of Contract

39.    Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

40.    SAIC contracts with TRICARE to protect and hold in its care sensitive personal information of Plaintiffs and the Class. ("Care Contracts")

41.    Under the circumstances, recognition of a right to performance of the Care Contracts, SAIC and TRICARE intended to give Plaintiffs and the Class the benefit of the performance promised by SAIC.

42.    Pursuant to the Care Contracts, Plaintiffs and the Class are intended third party beneficiaries.

43.    SAIC breached the Care Contracts by, *inter* alia, failing to adequately safeguard Plaintiffs' and the Class's sensitive personal information.  SAIC breached the Care Contracts by, *inter* alia, failing to monitor, audit, oversee and confirm that SAIC's safeguards were adequate and complied with all applicable laws.

9

44. SAIC's breach of the Care Contracts directly and/or proximately causes Plaintiffs and the Class to suffer substantial damages in the form of, *inter* alia, the costs of monitoring accounts for instances of fraud and the costs of additional safeguards to protect themselves from identity theft.

## Count 3: Breach of Implied-in-Fact Contract

45. Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

46. As is required for all TRICARE patients, TRICARE required Plaintiffs and Class members to provide SAIC with their private, non-public, sensitive personal information.

47. Implicit in this requirement was a covenant requiring SAIC to take reasonable efforts to safeguard this information and promptly notify Plaintiffs and Class members in the event their information was compromised.

48. Similarly, through its statements regarding its security measures, SAIC impliedly promised Plaintiffs and the Class members that it would take adequate measures to protect the Plaintiffs' and Class members' private, non-public, sensitive personal information

49. Notwithstanding its obligations imposed by these implied contracts, SAIC knowingly failed to safeguard and protect Plaintiffs' and Class members' private, non-public, sensitive personal information. SAIC's above wrongful actions and/or inaction breached its implied contracts with Plaintiffs and the Class members, which directly and/or proximately caused Plaintiffs to suffer injuries.

10

## Count 4: Injunctive Relief

50.     Plaintiffs incorporate by reference those paragraphs set out above as though fully set forth herein.

51.     Plaintiffs and the Class request that the Court enjoin SAIC to require SAIC to comply with its obligations to monitor, audit, oversee and confirm that its procedures and safeguards are adequate and comply with all applicable laws and guidance are in place and being properly managed, updated and maintained to minimize the likelihood of future data breaches.

52.     Plaintiffs and the class request injunctive relief because monetary damages alone are insufficient to redress the irreparable harm Plaintiffs and the Class face absent these injunctive measures.

**WHEREFORE**, the Plaintiffs, individually and on behalf of the Class members, respectfully request that (a) SAIC be required to appear and answer this lawsuit, (b) this action be certified as a class action, (c) Plaintiffs be designated the Class Representatives, and (d) Plaintiffs' Counsel be appointed as Class Counsel. Plaintiffs, individually and on behalf of the Class members, further request that upon final trial or hearing, judgment be awarded against SAIC for:

(i) actual damages to be determined by the trier of fact;

(ii) pre- and post-judgment interest at the highest legal rates applicable;

(iii) appropriate injunctive and/or declaratory relief;

(iv) reasonable attorneys' fees and litigation expenses incurred through the trial and any appeals of this case;

(v) punitive damages, treble damages, and statutory damages;

(vi) costs of suit; and

11

(vii) such other and further relief that this Court deems just and proper.

Dated: October 7, 2011

Respectfully submitted,

By:   Peter J. Mougey
      James L. Kauffman
      **Levin Papantonio Thomas Mitchell**
      **Rafferty & Proctor, P.A.**
      316 South Baylen Street, Suite 600
      Pensacola, Florida 32502-5996
      Telephone: (850) 435-7068
      Facsimile: (850) 436-6068

      *Attorneys for Plaintiffs*